_____

No. 96-2053
_____

United States of America,       *
                                *
          Appellee,             *
                                *
     v.                         *  Appeal from the United States
                                *  District Court for the District
Juan Francisco Flores-Mireles,  *  of Minnesota.
                                *
          Appellant.            *


_____

          Submitted:  October 25, 1996

             Filed:  April 24, 1997
_____

Before WOLLMAN, ROSS and MURPHY, Circuit Judges.

_____

ROSS, Circuit Judge.


     Appellant Juan Francisco Flores-Mireles appeals from his conviction by a jury of two counts of possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and being an illegal alien in possession of a firearm, 18 U.S.C. § 922(g)(5).  Following his conviction, appellant was sentenced to a term of 63 months imprisonment.  On appeal he argues that he was denied his constitutional right to due process and a fair trial because of various errors made by the prosecution including Brady violations and prosecutorial misconduct.  We affirm the conviction by the district court.[1]

_____

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

I.

In September 1994, Officer Bruce Fleury of the Clay County, Minnesota Sheriff's Department, assigned to the DEA task force, received information that appellant was distributing substantial quantities of cocaine in the Fargo/Moorhead area. Officer Fleury conducted further investigation which included four controlled buys of cocaine from appellant by a DEA informant named Gerardo Garza. Garza carried a wireless transmitter and recorded all four buys. After the controlled buys, Officer Fleury obtained search warrants for appellant's trailer home and vehicles, as well as the home of Martin Perez, an uncle of the informant and a cooperating government witness. Then, based in part on information received from Perez, Officer Fleury obtained a search warrant for the appellant's farmhouse.

Appellant was arrested on November 1, 1994, by the Moorhead Police Department following execution of the search warrants. As a result of the search, officers recovered 27.9 grams of cocaine from appellant's vehicle parked outside his trailer home and 700.7 grams of cocaine from appellant's farmhouse. Officers also recovered an electronic scale, drug paraphernalia, packaging material, drug notes, more than $5,000 cash and a firearm. Evidence at trial showed that appellant rented the trailer home in Moorhead, Minnesota, and, using the name Ramon Santellanes, rented the farmhouse in Felton, Minnesota, where the 700 grams of cocaine was recovered.

II.

Appellant cites a litany of alleged discovery violations on the part of the government which he contends violated the dictates of Brady v. Maryland, 373 U.S. 83 (1963), and collectively served to reduce the effectiveness of defense counsel to try the case and undermined the confidence in the outcome by the jury. Appellant

presents many of these alleged discovery violations without any supporting argument and consequently they amount to nothing more than "cursory and summary assertion[s]." <u>United States v. Gonzales</u>, 90 F.3d 1363, 1369 (8th Cir. 1996). We consider only those contentions with sufficient supporting argument to allow us to review them on appeal. <u>See</u> <u>id</u>. at 1369-70.

In order to prove a <u>Brady</u> violation, the "defendant must show that the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment." <u>United States v. Duke</u>, 50 F.3d 571, 577 (8th Cir.), <u>cert. denied</u>, 116 S. Ct. 224 (1995). Evidence is material under <u>Brady</u> "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Id</u>. "Reasonable probability" is defined as a "probability sufficient to undermine confidence in the outcome." <u>Id</u>. There is no duty to disclose evidence that is 1) neutral, speculative or inculpatory, 2) available to the defense from other sources, 3) not in the possession of the prosecutor, or 4) over which the prosecutor has no actual or constructive control.

Appellant first argues that a <u>Brady</u> violation occurred when the government denied informant Garza's material role in the case and ignored discovery requests to make Garza known and available prior to trial. The government explains it failed to produce evidence of the informant because no decision was made to use the evidence of the controlled buys through the testimony of Garza until May 12, 1995, just three days prior to trial. Although we in no way condone the government's delay in releasing evidence with regard to the informant, we do not agree with appellant that this delay amounted to a violation under <u>Brady</u>. The informant testified about his participation in the controlled buys from appellant and offered no exculpatory evidence. Because no evidence associated

-3-

with the informant was favorable to the appellant, the <u>Brady</u> analysis simply does not apply.

Appellant also argues a <u>Brady</u> violation occurred when the government failed to release the tape recordings of the controlled buys, which were discoverable under Rule 16(a)(1) of the Federal Rules of Criminal Procedure as a "recorded statement[] made by the defendant."  On May 15, 1995, the first day of trial, the district court ordered the tapes to be released to the defense and further ordered the government to have the tapes transcribed and translated by the end of the following day.  After the second day of trial, the court recessed the trial testimony for six days at the request of defense counsel in order to complete transcription of the tapes.  The district court rejected appellant's request that the court exclude the tapes as a sanction against the government, and instead chose to allow a continuance to the defense in order to review the tapes.

Once again the appellant incorrectly characterizes the government's delayed disclosure of the tape recordings as a <u>Brady</u> violation as this evidence was not favorable to the appellant.  In fact, to the contrary, the tapes were highly incriminating and probative of appellant's guilt.  The district court has broad discretion in fashioning sanctions for violations of Rule 16, and that decision will be overturned only upon a finding of an abuse of discretion.  <u>United States v. Manthei</u>, 979 F.2d 124, 126 (8th Cir. 1992).  Here, the district court ordered the immediate release of the tapes once it became evident the government intended to call Garza as a witness.  Further, the court granted an extended continuance in order to provide time for the tapes to be transcribed and the defense an opportunity to review the transcript.  Although delayed, the defense had an opportunity to examine the transcripts of the tapes and to use them during trial.

Appellant also argues that a <u>Brady</u> violation occurred when the government failed to disclose that it had obtained a latent fingerprint that had been unidentified and unexamined. During direct examination, a DEA chemist revealed that the missing print card had been found in the DEA lab file. At this time the government had the print examined. Again, following some delay, the government made the test results available to the defense for use during trial. The results were neither inculpatory nor exculpatory, as they simply showed the print belonged to neither appellant, Garza nor Perez. There was no indication to whom the print belonged.

The district court made clear throughout the proceedings, and we agree, that the government was remiss in failing to comply with discovery orders. While we in no way condone this dereliction of duty, we conclude that under the circumstances of this case there simply is no cause shown for reversal of appellant's conviction. Because none of the allegedly withheld or delayed release of information was favorable to appellant, <u>Brady</u> is not implicated. The court did not abuse its discretion in choosing appropriate sanctions for the government's actions.

III.

As his next point for reversal, appellant argues that he was denied his right to due process and a fair trial as a result of prosecutorial misconduct. To reverse a conviction for prosecutorial misconduct, this court must find both that the prosecutor's conduct was improper and that it was so offensive as to deprive the defendant of a fair trial. <u>United States v. Hale</u>, 1 F.3d 691, 694 (8th Cir. 1993). To determine the effect of alleged prosecutorial misconduct, this court will examine the cumulative effect of the misconduct, the strength of the evidence against the defendant, and the curative actions taken. <u>Id</u>.

Appellant contends the government's conduct denied him due process and a fair trial by (1) failing to disclose the identity of the informant and to provide discovery related to the informant; (2) failing to correct false testimony; and (3) arguments made by the prosecutor during closing argument.  We disagree.

Disclosure of a confidential informant will not be ordered unless it is vital to a fair trial.  United States v. Curtis, 965 F.2d 610, 614 (8th Cir. 1992).  Until the eve of trial, the government chose not to call Garza as a witness as the controlled buys were not charged conduct in the indictment.  When the decision was made to call Garza as a witness, the identity of the informant was disclosed to the defense and a continuance was granted to allow the defense sufficient opportunity to prepare and ultimately to fully cross-examine Garza.

Appellant next asserts two instances where the government allegedly failed to correct false testimony.  First, he claims the informant was allowed to testify falsely that there was no written agreement between the DEA and himself in exchange for his cooperation, and second, that Special Agent Joseph Jovonovich falsely testified that the case was in fact a conspiracy case, although the crime of conspiracy was not charged in the indictment.  Again, appellant contends the prosecutor joined in the false testimony by failing to correct the errors.

First, Garza did not testify falsely.  Appellant challenges Garza's testimony that there was no written agreement from the government that Garza would not be charged in his own case, but that the government had discussed a possible sentence reduction.  Appellant points to nothing in the record that refutes this testimony.  There is discussion regarding payment vouchers detailing money that Garza may have received in exchange for his testimony, but nothing discredits Garza's testimony brought to issue by appellant that Garza had not received a written agreement

from the government that he would not be charged for his own crime.

Second, during his cross-examination by defense counsel, Agent Jovonovich stated that this "is a conspiracy case." A sidebar conference was immediately called at which the district court denied defense counsel's motion for a mistrial. The court instructed the jury, however, that there was no conspiracy charge in this case. The obscure reference to a "conspiracy," while inaccurate, did not deprive appellant of his right to due process or a fair trial sufficient to reverse the conviction in this case. Agent Jovonovich's testimony was subsequently corrected both by impeachment of the witness and a cautionary instruction by the district court. Further, the prosecution did not "join in" this inaccurate testimony as appellant argues, as the challenged testimony was elicited by defense counsel and immediately corrected by the court and the defense.

Finally, appellant claims prosecutorial misconduct occurred during closing arguments when the prosecutor improperly vouched for the truthfulness of Officer Fleury, suggested that defense counsel had lied, and stated that Perez and Garza had nothing to gain by their testimony.

We have reviewed the record for instances of prosecutorial misconduct that would individually or collectively require a reversal of the conviction, and we find none. Further, even if we were to assume the prosecution committed misconduct, there is no basis in the record to reverse the conviction considering the overwhelming evidence of guilt presented at trial.

IV.

Nor do we agree with appellant that the cumulative effect of trial court errors constituted a denial of appellant's right to due process or a fair trial. Specifically, appellant claims the court

erred in failing to sequester Officer Fleury, in admitting Rule 404(b) evidence and in failing to review files in camera. Again, we have reviewed those claims and find them to be without merit. The district court did not abuse its discretion in choosing not to sequester Officer Fleury during the trial. The court did not abuse its discretion in ruling that the Rule 404(b) evidence was offered to show intent and common scheme or plan. Finally, the district court reviewed in camera a substantial amount of material. The fact that the court did not read the entire government file was not an abuse of discretion.

V.

Based on the foregoing, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.