# United States Court of Appeals

# FOR THE EIGHTH CIRCUIT

_____

No. 97-3117

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa |
| Calvin C. Gillings, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:   December 9, 1997

Filed:   September 23, 1998

_____

Before McMILLIAN, MAGILL and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Calvin C. Gillings appeals from a final order entered in the United States District Court[1] for the Southern District of Iowa, upon a jury verdict, finding him guilty of possession with intent to distribute cocaine base and possession with intent to distribute

_____

[1]The Honorable Charles R. Wolle, Chief Judge, United States District Court for the Southern District of Iowa.

cocaine in violation of 21 U.S.C. § 841(a)(1). The district court sentenced defendant to a total of 360 months imprisonment, 8 years supervised release, and a special assessment of $100.00. For reversal, defendant argues the district court erred in denying his motions to dismiss or for mistrial or sanctions because the government failed to disclose exculpatory evidence in a timely manner and the evidence was insufficient to support the conviction. For the reasons discussed below, we affirm the judgment of the district court.

The district court had original jurisdiction over this criminal case under 18 U.S.C. § 3231. Defendant filed a timely notice of appeal under Fed. R. App. P. 4(b). We have jurisdiction over the appeal under 28 U.S.C. § 1291.

On April 4, 1996, defendant was visiting his friends, Odis and Paula Carter, in Clinton, Iowa. The police suspected the Carters were involved in drug trafficking. At about 9:00 p.m. the police arrived at the Carter house and saw a blue Pontiac Grand Prix parked in the driveway. The police knocked on the door and were admitted by Paula Carter. Defendant and three children were sitting on the living room sofa. The police wanted to speak to Odis Carter. Paula Carter called Odis Carter, who came upstairs from the basement and went into a bedroom to talk to the police.

According to one police officer, defendant was wearing jeans, a denim jacket and a stocking cap. Another officer, however, testified that he had not seen defendant wearing a jacket. After talking to Odis Carter, the police noticed that defendant was still sitting in the living room but was no longer wearing a jacket. One police officer believed defendant had removed his jacket. The police left the house to get a consent-to-search form from their patrol car. While they were outside, a neighbor, Mr. George Chermay, approached them and told them that, while they were inside the house, he saw someone whom he described as 5'9" to 6' tall come out of the house and put a jacket in the trunk of a car. Defendant is 5'5" tall. Chermay later identified defendant as that person.

The police subsequently questioned defendant. Defendant admitted leaving the house and going to the car. The police searched defendant and found 1 gram of cocaine base in his pants pocket and the keys to the car on a key ring attached to defendant's belt. Defendant told the police that the pants and the cocaine base were not his. The police also found $892 in cash in defendant's possession. Defendant explained that the money represented his pay and a tax refund. The police then asked defendant for consent to search the Pontiac Grand Prix parked in the driveway. Defendant told the police that the car belonged to his sister. The police obtained a search warrant for the car and found in the trunk a blue and white flannel jacket. Inside the jacket the police found cocaine in two plastic bags and a film canister.

Meanwhile, in the basement of the house, the police found Mr. Liebert and Ms. Culberson, inositol (a cutting agent), cocaine base, and cocaine base residue. The police arrested defendant, Odis Carter and Ms. Culberson for possession of a controlled substance.

At the trial Odis and Paula Carter testified for the government. Another neighbor, Carol Dietrick, testified that she saw someone go outside while the police were inside the Carter house. The person was not wearing a jacket. Ms. Dietrick also testified that there was a lot of traffic at the Carter house. Another neighbor, Robert Shaw, testified that he had begun keeping notes about the license plates of the cars that stopped by the Carter house.

Defendant was indicted and charged with possession with intent to distribute cocaine base and possession with intent to distribute cocaine. The case was tried to a jury. After the jury had been sworn, the government presented defense counsel with a laboratory report that stated that no latent fingerprints had been found on the plastic bags or the film canister found in the jacket taken from the trunk of the Pontiac Grand Prix. The government had apparently known about the laboratory report for about two weeks. Defense counsel requested a continuance. The district court granted a half-day

continuance. The government then gave defense counsel 5 photographs of fingerprints taken from plastic bags found during a search of Ms. Heather Walton's apartment some 2 months after the search of the Carter house and the Pontiac Grand Prix. The government suspected that Ms. Walton was connected to defendant's drug trafficking. The fingerprints were not identified as defendant's. Defense counsel filed motions to dismiss or for mistrial or sanctions. The district court denied the motions. The jury found defendant guilty on both counts. The district court denied defendant's post-trial motions and sentenced defendant to a total of 360 months imprisonment, 8 years supervised release and a special assessment of $100.00. This appeal followed.

FAILURE TO DISCLOSE EVIDENCE

Defendant first argues the district court erred in denying his motions to dismiss or for mistrial or sanctions because the government failed to disclose material exculpatory evidence in a timely manner. Defendant argues the government improperly delayed producing the laboratory report about the fingerprints and the 5 fingerprint photographs. Defendant argues he was prejudiced by the government's failure to disclose the laboratory report and fingerprint photographs in a timely manner because he was unable to match the fingerprints to Liebert, Ms. Culberson, Odis Carter, or Ms. Walton. He argues that the half-day continuance was too short to contact an expert or to subpoena Ms. Walton.

The government has an affirmative duty to disclose evidence that is favorable to the accused and material to guilt or punishment. Fed. R. Crim. P. 16; Brady v. Maryland, 373 U.S. 83 (1963). Although we do not condone the government's delay in disclosing the laboratory report and the fingerprint photographs to defense counsel, we do not agree with defendant that this delay amounted to a violation of Brady v. Maryland. See, e.g., United States v. Flores-Mireles, 112 F.3d 337, 340 (8th Cir.), cert. denied, 118 S. Ct. 350 (1997). The laboratory report and the fingerprint photographs were not necessarily favorable to the defense. The laboratory report was

-4-

neutral evidence; it reported only that no latent fingerprints had been found on the plastic bags and film canister found in the jacket. The fingerprint photographs were of fingerprints found on plastic bags found in Ms. Walton's apartment and were not identified as defendant's. The fingerprint photographs were neutral and speculative evidence in light of the lack of any connection between defendant and Ms. Walton. Defendant was charged with possession with intent to distribute. The government's theory of the case against defendant did not involve any conspiracy or concerted action between defendant and Ms. Walton or any other individuals. Because the laboratory report and the fingerprint photographs were not necessarily favorable to defendant, the government's delay in disclosing this evidence did not violate Brady v. Maryland. We hold the district court did not abuse its discretion in denying the motions to dismiss or for mistrial or sanctions.

SUFFICIENCY OF THE EVIDENCE

Defendant next argues the evidence was insufficient to support the jury verdict. He argues he was not in the basement of the Carter house where the evidence of cocaine distribution was found and that the only evidence connecting him to drug trafficking was the 1 gram of cocaine base found in his pants pocket. Defendant also argues that no fingerprint evidence connected him to the plastic bags or the film canister found in the jacket in the trunk of the Pontiac Grand Prix. He also argues that he is much shorter than the person whom Chermay saw leaving the Carter house.

"The standard of review of an appeal concerning the sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." United States v. Burks, 934 F.2d 148, 151 (8th Cir. 1991). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." United States v. Erdman, 953 F.2d 387, 389 (8th Cir.), cert. denied, 505 U.S. 1211 (1992). "In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the

government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." Id. "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." Id. "If the evidence rationally supports two conflicting hypotheses, the reviewing court will not disturb the conviction." United States v. Burks, 934 F.2d at 151.

We hold that the evidence was sufficient to support the jury verdict finding defendant guilty of possession with intent to distribute cocaine base and cocaine. "To convict [defendant] on a violation of 21 U.S.C. § 841(a)(1), the government had to prove that [defendant] knowingly possessed [cocaine base and cocaine] with the intent to distribute." United States v. McCracken, 110 F.3d 535, 541 (8th Cir. 1997). "Proof of constructive possession is sufficient to satisfy the element of knowing possession. Constructive possession of drugs can be established if a person has 'ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.'" Id. (citation omitted). Here, the evidence showed that defendant had actual possession of the cocaine base. The cocaine base was found in his pants pocket. The evidence also showed defendant had at least constructive possession of the cocaine. Defendant was seen wearing a jacket like the one in which the cocaine was found, defendant was seen placing the jacket in the trunk of the Pontiac Grand Prix, and the keys to the car were found in defendant's possession. A rational jury could have inferred defendant had the intent to distribute on the basis of the quantity of drugs found, the cash, and the drug paraphernalia found in the basement.

Accordingly, the judgment of the district court is affirmed.

A true copy.

Attest:

U.S. COURT OF APPEALS, EIGHTH CIRCUIT.