# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2326

_____

United States of America,           *
                                           *

        Plaintiff - Appellee,     *

                                           *   Appeal from the United States

     v.                         *   District Court for the Southern
                                         *   District of Iowa.

Brian Patrick Street,           *
                                         *

        Defendant - Appellant.   *

_____

Submitted: February 14, 2008
Filed: July 11, 2008

_____

Before BYE, RILEY, and BENTON, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted Brian Street of one count of sexual exploitation of a minor, 18 U.S.C. § 2251(a), and one count of possession of visual depictions of a minor engaging in sexually explicit conduct, 18 U.S.C. § 2252. The district court[1] sentenced him to concurrent 360 month and 120 month sentences, respectively. Street appeals his convictions and sentences. We affirm.

_____

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

On March 31, 2005, a fire consumed the house where Street, his wife, and her three children resided. Street, his wife, and her oldest daughter, TD, survived the fire, but the two younger children perished. TD, then seventeen, told investigators Street had been sexually abusing her for three or four years and she set the fire in an attempt to kill him. She told investigators about several Polaroid photographs Street kept in a safe which he had taken of her in various sexually explicit poses, as well as photographs showing her and Street engaged in sexual acts. Investigators located the safe and found sixty-five sexually explicit photographs and five pair of women's underwear. TD stated Street bought the underwear for her, and DNA testing linked the items to TD and Street. Fifty-eight of the photographs were of Street and TD, while seven depicted Street's seventeen-year-old biological daughter. The photographs of TD and Street's daughter were taken at or near the same time. When investigators confronted Street he claimed TD willingly engaged in the sexual activities. When shown the photographs, he refused to answer additional questions and requested a lawyer.

In preparing for TD's criminal prosecution stemming from the arson and deaths, her lawyers considered an insanity defense. To that end, TD was examined by a social worker who reported TD was suffering from post-traumatic stress disorder at the time of the fire and had been incapable of knowing and understanding the quality of her actions. The social worker further opined that on many occasions prior to the fire TD had been incapable of distinguishing right and wrong. TD's lawyers later abandoned the insanity defense and she pleaded guilty to voluntary manslaughter, attempted murder, and arson. Despite TD's knowing and voluntary guilty plea, Street argued the social worker's report was evidence TD was incompetent to testify at his trial. Accordingly, he asked the district court to order an independent mental examination to explore TD's competency to testify. The district court noted there was evidence indicating she was "a very troubled young woman." Nevertheless, the court refused

to order an involuntary examination, finding insufficient evidence to show TD was legally incompetent to testify or to overcome her refusal to submit to the examination.

Street also filed a motion in limine asking the district court to allow into evidence emails and letters from TD indicating she and Street had been involved in a "mutual, loving" relationship and she consented to their sexual activities. The district court concluded the evidence – which described various sexual encounters in great detail – was inadmissible under Rule 412 of the Federal Rules of Evidence. The court held Street could present other evidence to support his claim of a mutual and loving relationship, but excluded the writings.

At trial, the government sought to admit evidence of Street's sexual relationship with his biological daughter. The district court ruled all such evidence inadmissible. Later, the district court allowed the sexually explicit photographs of the daughter to be presented as long as the subject of the photographs was not identified. According to the district court, the presence of another victim was relevant and admissible, but it would be unfairly prejudicial to allow the jury to know the victim was Street's biological daughter.

Street also offered evidence indicating TD's intent in setting the fire was not only to kill him but also to kill her siblings and mother. In support of the motion, Street offered various writings by TD describing plans to start the fire and obituaries she wrote in advance for each member of the family. Though not directly relevant to the charges against him, Street argued the evidence was relevant to impeach TD's credibility. The district court excluded the evidence as irrelevant.

Finally, Street objected to the district court's calculation of his Guideline sentencing range. Specifically, Street objected to a four-level increase based on a finding the photographs depicted sadistic, masochistic, or violent conduct, United States Sentencing Guidelines § 2G2.1(b)(4), and a two-level increase based on a

finding Street committed the crimes while acting as the parent, relative or legal guardian of a minor victim, U.S.S.G. § 2G2.1(b)(5). The district court overruled the objections and concluded the enhancements were legally warranted.

On appeal, Street argues the district court erred by 1) refusing to order a psychiatric examination, 2) excluding evidence of TD's consent, 3) permitting evidence of another victim, 4) excluding evidence of TD's intent to kill other family members, 5) instructing the jury consent was not a defense, 6) denying his motion for judgment of acquittal or new trial, and 7) imposing the four-level and two-level enhancements.

II

1.      Psychiatric Examination

Street first argues the district court erred in refusing to order a psychiatric examination to determine TD's competency to testify.

A district court has the discretion to order a witness undergo a psychological evaluation but such examinations are considered a "drastic measure." United States v. DeNoyer, 811 F.2d 436, 439 (8th Cir. 1987) (quoting United States v. Riley, 657 F.2d 1377, 1387 (8th Cir. 1981)). Absent a strong showing of need, the court does not abuse its discretion by refusing to order the examination. United States v. Kehoe, 310 F.3d 579, 592-93 (8th Cir. 2002).

The district court noted there was evidence indicating TD was "very troubled." It also took note of the social worker's report suggesting TD was not legally responsible at the time she set the fire, and of inconsistencies between the report and TD's account of the fire and events leading to the fire. Nonetheless, after reviewing the evidence and observing TD, the court concluded there was insufficient evidence to show she was incapable of testifying truthfully. To the extent there were

-4-

inconsistencies between her testimony and the social worker's report, the court concluded defense counsel was free to develop those inconsistencies on cross-examination. Additionally, the court found TD's credibility was not crucial to the government's case in light of the strong photographic evidence. TD verified she was depicted in the photographs and described the activities depicted, but the jury's evaluation of the content and circumstances was largely independent of her testimony.

Street also argues TD was ordered to undergo a "psychiatric examination" by the Iowa Department of Corrections and was given a "psychological evaluation." According to Street, the fact DOC ordered a full psychiatric examination is proof TD suffered from mental problems affecting her ability to testify. We disagree. Street points to nothing in the evaluation or to any other evidence which suggests TD suffered from a condition affecting her ability to testify. Indeed, apart from the questionable opinion offered by the social worker, no evidence contradicts the trial court's observations. Accordingly, the district court's refusal to order a mental examination was well-founded and we affirm the denial.

2.     Evidence of TD's Consent

Street next argues the district court erred when it excluded letters and emails TD sent to Street. The emails and letters in question describe their sexual relationship in great detail, and, according to Street, prove they engaged in consensual conduct. The district court concluded the evidence was prohibited under Fed. R. Evid. 412 as evidence of a victim's prior sexual behavior. Street argues the evidence falls within an exception to Rule 412 which allows such evidence if offered to prove consent. Fed. R. Evid. 412(b)(1)(B).

We review a district court's interpretation and application of the rules of evidence de novo and its evidentiary rulings for abuse of discretion. United States v. Wilcox, 487 F.3d 1163, 1170 (8th Cir. 2007). Here the district court properly

concluded consent was not a defense and, because TD's willingness to engage in the acts was irrelevant, Rule 412's consent exception was inapplicable. Street, however, argues he was not offering the evidence to prove TD willingly engaged in the sexual activity. Rather, the government was required under 18 U.S.C. § 2251(a) to prove the photographs were taken for the purpose of producing visual depictions of a minor engaged in sexually explicit conduct. According to Street, evidence showing he and TD were involved in a mutual and loving relationship proved the photographs were taken to foster their relationship – not for the purpose prohibited under the statute.

To the extent Street offered the photographs to refute the government's evidence, they were relevant. Despite being prohibited from offering the emails and letters, however, the district court allowed Street to present other evidence, e.g., TD's testimony on cross-examination, to support his defense theory. Thus, while the evidence was not wholly irrelevant, the district court did not abuse its discretion by balancing Street's need to present a defense against the need to limit evidence containing gratuitous descriptions of sexual acts.

### 3. Evidence of Another Victim

Street moved to exclude evidence indicating he had a sexual relationship with his biological daughter and had produced sexually explicit visual depictions of her. Initially, the district court ruled the photographs inadmissible under Fed. R. Evid. 403 and prohibited the government from mentioning the relationship. The court held it would be unfairly prejudicial and inflammatory for the jury to discover Street had a sexual relationship with his own daughter. Later, however, the district court modified its ruling and allowed the photographs to be presented under Fed. R. Evid. 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The court did not permit the government to identify the person depicted in the photographs. Street argues the district court erred when it modified its previous ruling and allowed the photographs. According to him,

evidence of another victim was unfairly prejudicial and should have been excluded under Rule 403.

Street's defense was he took the photographs of TD and himself to foster their mutual and loving relationship, not because he wanted sexually explicit photographs of a minor. Evidence Street took sexually explicit photographs of another minor female tended to disprove his asserted motive and intent for producing the photographs. It also demonstrated opportunity and plan. Therefore, the evidence was admissible under Rule 404(b), and any risk of unfair prejudice was minimized by the court's order precluding the government from identifying the other victim.

### 4. Evidence of TD's Intent to Kill Other Family Members

Street contends the district court erred when it excluded evidence showing TD started the fire to kill her entire family. According to Street, TD testified she set the fire only to kill Street, but evidence showing she intended to kill other victims undermines her overall credibility. Street also argues the government "opened the door" to this evidence by asking if she had ever been convicted of a crime.

The government contends the evidence is irrelevant and was offered for the sole purpose of vilifying TD in front of the jury. The government further contends it inquired into TD's criminal history only because a conviction is admissible under Fed. R. Evid. 609, and its questioning under Rule 609 was limited to the fact of conviction and did not elicit information as to the motive for setting the fire.

Evidence purporting to show TD intended to kill her entire family suggests she was deeply disturbed but sheds no light on Street's purpose for creating the sexually explicit photographs. The evidence does suggest TD's motive in setting the fire was broader than she admitted but the district court did not err in concluding it would have been unfairly prejudicial. TD's credibility was not paramount to the government's

case because the photographic evidence was largely independent of her testimony. In other words, the pictures showed what they showed. Conversely, had the jury believed TD contemplated killing her entire family, it may have refused to convict Street despite strong evidence of guilt. Therefore, the district court did not abuse its discretion when it excluded Street's proffered evidence.

5.     Jury Instruction – Consent

Street next argues the district court's instruction on consent was erroneous. We review the district court's jury instructions for an abuse of discretion. United States v. Jackson, 345 F.3d 638, 648 (8th Cir. 2003).

The district court's instruction on consent stated: "A minor may not legally consent to being sexually exploited. A minor's seemingly voluntary participation in sexually explicit conduct and/or in producing images of such conduct is not a defense to any of the charges in the indictment." Street does not contend the instruction contains an erroneous statement of the law. Rather, he argues the second sentence of the instruction should have been omitted because it overemphasized the issue of consent.

The parties agree consent was not a defense to any of the charges against Street. Thus, the instruction does not contain any misstatement of the law. Further, even assuming the second sentence was unnecessary, Street does not explain how it prejudiced his case. See United States v. Cacioppo, 460 F.3d 1012, 1025 (8th Cir. 2006) ("Properly objected to jury instructions are reviewed for harmless error pursuant to Fed. R. Crim. P. 52(a).") (quoting United States v. Jacobs, 97 F.3d 275, 278 (8th Cir. 1996)). Accordingly, we reject this claim of error.

6.    Sufficiency of the Evidence – Judgment of Acquittal/New Trial

Street argues the evidence was insufficient to sustain the jury's verdict and the district court erred in refusing to grant his motion for judgment of acquittal or new trial.

We review the district court's denial of a motion for judgment of acquittal de novo.  United States v. Campa-Fabela, 210 F.3d 837, 839 (8th Cir. 2000).  When judgment of acquittal is sought on the basis of insufficiency of the evidence we view the evidence in the light most favorable to the verdict and give the government the benefit of all reasonable inferences that can logically be drawn from the evidence. United States v. James, 172 F.3d 588, 591 (8th Cir. 1999) (citations omitted).  The verdict must be upheld if "there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant[] guilty beyond a reasonable doubt." United States v. Vig, 167 F.3d 443, 445 (8th Cir. 1999).  We will not lightly overturn the jury's verdict, United States v. Gillings, 156 F.3d 857, 860 (8th Cir. 1998), and "[r]eversal is appropriate only where a reasonable jury could not have found all the elements of the offense beyond a reasonable doubt." United States v. Armstrong, 253 F.3d 335, 336 (8th Cir. 2001).

We will reverse a district court's denial of a motion for new trial if the district court abused its discretion.  United States v. Robbins, 21 F.3d 297, 299 (8th Cir. 1994).

> An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered, when an irrelevant or improper factor is considered and given significant weight, or when all proper and no improper factors are considered, but the court in weighing those factors commits a clear error of judgment.

United States v. Kramer, 827 F.2d 1174, 1179 (8th Cir. 1987).

The trial court "has wide discretion in deciding whether to grant a new trial in the interest of justice," but the authority to set aside a jury verdict and grant a new trial "should be exercised sparingly and with caution." United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980). When a defendant moves for a new trial arguing the verdict is contrary to the weight of the evidence, the district court should grant the motion only if

> the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred . . . . In making this determination, the court need not view the evidence in the light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.

United States v. Lacey, 219 F.3d 779, 783-84 (8th Cir. 2000).

Street's sufficiency of the evidence argument is without merit. The evidence presented by the government established – without question – Street produced numerous sexually explicit photographs of at least two minor females. The only defense Street asserted was his claim the photographs of TD and himself were produced to further their relationship. The claim, however, was undercut by proof he took similar photographs of a second underage female. Viewed in the light most favorable to the verdict, the evidence fully supports the jury's decision. Accordingly, we affirm the district court's denial of the motion.

7.    Sentencing Enhancements

Street's final claims of error involve sentencing enhancements imposed by the district court under U.S.S.G. §§ 2G2.1(b)(4) and 2G2.1(b)(5).[2]

_____

[2]Street argues the enhancements were unwarranted but does not argue his sentence is unreasonable.

-10-

a.  Section 2G2.1(b)(4)

Section 2G2.1(b)(4) calls for a four-level increase in base offense level if the photographs depicted sadistic, masochistic or violent conduct.  Several of the photographs depicted Street engaging in anal sex with TD which the district court concluded was sadistic or violent.  While Street contends anal sex does not meet the definition of sadistic or violent conduct, we have held "images involving . . . an adult male performing anal sex on a minor girl . . . are per se sadistic or violent."  United States v. Diaz, 368 F.3d 991, 992 (8th Cir. 2004).  Street's arguments to the contrary are without merit and the enhancement was appropriate under our existing precedent.

b.  Section 2G2.1(b)(5)

Section 2G2.1(b)(5) calls for a two-level enhancement if the perpetrator was a parent, relative, or legal guardian of the minor victim "or if the minor was otherwise in the custody, care, or supervisory control of the defendant."  Street argues TD was a teenager who did not require supervision when these events took place and he did not act in a supervisory role.  Further, he contends his relationship with TD should be characterized as "boyfriend/girlfriend" not father/daughter.

There is no dispute the offense conduct took place over several years and began when TD was thirteen or fourteen years old.  There is also no dispute that during those years TD required supervision and was frequently left in the care and custody of Street.  Finally, despite the fact Street's marriage to TD's mother was discovered to be void, Street and the mother lived together as husband and wife and Street served as step-parent to her children.  Based on these facts, the district court did not err in concluding the enhancement applied.

## III

The judgment of the district court is affirmed.

_____